May I please the court, my name is Laura May and I together with Chris Kirkrain sitting at council table represent Ardell Shaw. Mr. Shaw requests this court order his convictions be vacated because the state violated his due process rights. The state failed to disclose evidence that Michael Hoover, the state crime lab chemist, was tampering with state's evidence by stealing drugs from the lab and using those drugs himself. At both of Mr. Shaw's trials, Michael Hoover was the state expert on the element that the recovered material was a narcotic. Counsel, let me just quickly tell you, since you don't have a lot of time, where my issue is in this case and maybe you can help me out. Let's assume that you're correct as to your first point, but if you are, don't we then conduct a de novo review of materiality to determine ourselves whether the Brady violation would have had any effect? And if we do that, the issue of whether the substance was or was not cocaine wasn't even contested at trial. I mean, where is the potential prejudice here? I agree that the question here is this court's de novo determination of whether this evidence was material at each of Mr. Shaw's trials. And I think the answer is that it was material. And it's important to remember the materiality standard, which is distinct from a sufficiency of the evidence test. And the inquiry, as the Supreme Court has said, is whether there's a reasonable probability that had the evidence been disclosed to the defense, the results of the proceeding would have been different. Okay, I understand that, but I don't see where there'd be any probability. Well, I have a couple of responses to that. One is that it's the result of the proceeding. And here we're in a unique situation where we have evidence in the record about materiality. We have the state's policy that in cases where it knew about Mr. Hoover's conduct, in all pending cases, at the time it knew of Mr. Hoover's misconduct, the cases were to be dismissed unless there was both a confession and positive field test. There was no confession in either of Mr. Shaw's cases. In addition to that, when looking at what evidence was presented at trial, we're not stuck with looking at how it was actually presented in this trial, but what that evidence would have looked like had the defense had the benefit of knowing about Hoover's misconduct. And it radically changes what was actually presented in both of these trials. And I'd like to start with the September incident. There we have the expert with unique particular weight given to expert testimony, as we know from this Court's decision in Bailey v. Ray. And then other than that, we have lay witness testimony, lay witness opinion testimony about the recovered material. And had defense known that the identity of the material was an open question, they would have challenged the admissibility of this lay opinion and at least raised a question about the basis for those opinions. Counsel, was there evidence in the record that field tests were conducted? No, there's no such evidence in the record. What about the booking reports? The booking reports were not part of trial. They are part of this Court's record, but they were not part of either trial. Well, you made the statement that unless there were a confession or field test, that the results wouldn't be used. But in this case, there was evidence that there were field tests, right? The policy was that there had to be a positive field test and a confession. Otherwise, they would dismiss the cases. Was that during the period when these tests were conducted on the drugs? The timing is the confusing part of this case. That policy was adopted well after Mr. Shaw's trial was completed because that's when Snohomish County Prosecutor's Office learned about Hoover's misconduct. But what that policy shows is that had they known at the time of Mr. Shaw's case, his case would have been pending when they knew, as all of these other cases were. The State draws the distinction that the tests that Mr. Hoover conducted were conducted back in 1997. And it says that this is significant because you have a superior court finding that under preponderance of the evidence standard, Hoover's misconduct began in 1998. Of course, Hoover didn't testify until 1999, but they say that somehow these tests are insulated. However, it's important to remember with the superior court findings that it was a preponderance of the evidence standard that they were trying to answer the question, when did this all start? And the superior court made specific findings that there was evidence that this misconduct started earlier than 1998. It just didn't reach the preponderance of the evidence level. And that additional evidence of misconduct as early as 1995 certainly would have been used by the defense in arguing with the prosecution that they should dismiss this case or plead it down, or with a jury, that the State could not prove its burden beyond a reasonable doubt. How about the affidavit of the assistant chief criminal deputy prosecutor, which said that the policy was not applied to cases which predated 1998? There is that, but it talks about cases pending in 1998. And so it may be that they didn't have this come up. But what the policy does reflect... But the affidavit specifically says we did not apply the policy to cases which predated that time frame. It was no earlier than 1998. And Mr. Hoover testified in these cases in 1999. Both of Mr. Shaw's trials occurred in 1999. No, he said cases that predated. So it's a case, not the trial. Well, I think it's unclear, because the policy refers to pending cases. And so cases in 1998, I mean, the State takes the position that they wouldn't have a post hoc position that that didn't apply when the tests occurred in 1997. But I think we can leave the... I think the policy is significant, but I think we can even put that aside and the materiality standard is still met. I want to go back to the lay witness opinions that I mentioned and how their testimony would have been challenged. The defense also would have presented its own expert on how visual identification of substances is completely inadequate. In fact, the defense elicited that testimony from Michael Hoover at the September trial. You can imagine much more aggressive testimony in that regard had the defense known that the substance at issue was an open question. Counsel, doesn't our case embark or preclude speculation regarding what would have been done or what tactics would have been used? There's certainly a preclusion of gross speculation. But the question is whether there's a reasonable probability the result would have been different. So, no, I don't think we can speculate about things that are totally outside the realm of the possible. But that's not what we're doing here. We're pointing to the state's actual policy. We're pointing to reasonable things that would have been done with the inculpatory evidence had the defense known about Hoover's misconduct. Right, but we also look at the other evidence that was admitted. And there was other evidence that the drugs were cocaine. So Hoover's testimony was not the only evidence in the record regarding the identity of the drug. Correct. The other testimony about the identity of the drug was lay witness opinion based on visual identifications. That's what was in the record. And I'm going to talk specifically about September 1st. There were two officers. People who use crack cocaine generally know what it is, right? There was an addict who testified that the substance was cocaine. His credibility was completely destroyed. In fact, even the state referred to him as the scum of Everett society. So the police officers, there was no testimony elicited about the basis they had for making this conclusion that based on a visual identification, this substance was actually crack cocaine. Did Officer Whatley testify that based on his special training in the area of drug identification, he concluded it was crack cocaine or rock cocaine? He did. But the defense never had the opportunity to impeach that testimony, to explore that further, because there was no knowledge that the identity of the substance was at issue. When you have the state's key expert, key witness, with no question about the legitimacy of the test he conducted, there was no reason to go after that. Didn't you also have testimony? Not you. Wasn't there also testimony from a witness who had purchased cocaine from him? At the September incident, the case where the evidence was destroyed before the defense ever had a chance to test it, there wasn't testimony from someone who had purchased it. The only testimony about the identity of the substance in the September trial came from two officers, one who commented that it was suspected cocaine. So where did Ms. Fulmer's testimony come in? That was in the July incident. Okay. Timing. I'm not good with the timing. Yeah. And there are two trials. And I do think the September incident is of particular concern when we have the state destroying the evidence before the defense ever had the opportunity to conduct its own independent examination. In light of all of the evidence that it would have had, had this evidence been disclosed, there's at least a reasonable probability the result would have been different. Thank you, counsel. We'll hear now from the State. May it please the Court. I'm John Sampson, Assistant Attorney General, representing the Respondent. In this case, relief is not available and the district court correctly denied the petition because the State court decision was a reasonable application of clearly established federal law. The Washington Supreme Court reasonably determined that the nondisclosure of Mr. Hoover's use and theft of heroin would not – there was not a reasonable probability that that evidence, had it been disclosed, would have affected the outcome of the trials in this case. And there were – the court has asked questions about the testimony other than Mr. Hoover's testimony. There was quite a bit of testimony in both trials that this substance was cocaine. In the July 1997 crime, Sharon Fulmer testified that she went to the gas station to buy cocaine and that Mr. Shaw responded to her call to purchase cocaine. Michael Hagees also testified that he went to the gas station to purchase cocaine and that he actually saw the baggie that was recovered by the police and he recognized the baggie as cocaine. Counsel says that's all in relation to July. Yes, Your Honor. Okay. Could you discuss specifically and only September? Because I'm having trouble keeping the two straight, I confess, and it would be of assistance to me if you focused entirely on September for me. Yes, Your Honor. September was the undercover buy arranged by the undercover police officer going by the name of Christy. She arranged to buy cocaine from D, who was Mr. Shaw. Mr. Shaw drove up in a car with another individual. She contacted him. He talked to her but did not initiate a transaction. She left. The police moved in. They saw him make a furtive movement into the back seat, and they then, upon arresting him, found a bag of cocaine and drug paraphernalia and a large sum of money. In that case, the person in the car with Mr. Shaw, Mr. Waklosky, testified at trial that he went to the store with Shaw to sell cocaine to Christy, and he testified specifically that the baggie found in the car was cocaine that belonged to Mr. Shaw. So you had testimony. In addition to Mr. Hoover's testimony, you had direct testimony that the substance was cocaine. Counsel, why was Hoover put on the stand? If you had all of this, which you say clearly indicates that the substance was indeed cocaine, why bother to put Hoover on the stand at all? It's common practice, Your Honor, to put the chemist who tests the drugs on the stand. And I'm not saying no, no, no. It wasn't. That isn't why you put that witness on the stand. Why did you put that witness on the stand? To testify that it was cocaine. You needed to close that gap by admissible evidence from a scientist, right? Yes, sir. And had it been known, had it been revealed to the defense, that this particular government witness was actually using heroin, you would not have put that witness on the stand, would you? The standard, Your Honor, because we have to look at these cases looking back. Is that yes or no or what? Your Honor, I was not the trial attorney. I was not the trial attorney. My speculation is they would not have called Mr. Hoover. All right. Would it have affected the outcome of the case? No. All right. Is there another? Would you have put on another expert from another crime lab? Would you have had it retested by another department? No, Your Honor, but as the Washington Supreme Court point or, I'm sorry, the Washington Court of Appeals pointed out, there were field tests that were not admitted that could have been used if Mr. Hoover had not testified. But, again, the standard is not what might have happened speculating. The question is, was this evidence that was not disclosed, is there a reasonable probability that when you look at this evidence and you look at the evidence that actually was presented at trial, would the outcome have been different? Would the jury not have convicted him? Let me ask you also about the policy. There's been some disagreement between you and defense counsel about the meaning and application of the state's policy. Do you agree with her comment, at least insofar as whatever the date is, there had to be both a confession and a field test? That is what the policy says. Okay. Now let's focus on the date. What is the state's interpretation of that policy with respect to a case like this one in which Mr. Hoover testified after that crucial 1998 date? Yes, Your Honor. The policy is actually an e-mail from the chief criminal deputy. It was an e-mail sent in 2001. Excerpts of record 69 is the e-mail that was sent in 2001. Since it did not exist at the time of the trial, looking at the facts of this case, the case would not have been dismissed because that policy didn't exist at the time of the trial. It's speculation as to whether or not the case would have been dismissed retroactively applying something that did not exist. Is there a reasonable probability that it would have been applied had the facts been known concerning Mr. Hoover's theft and use of narcotics from a lab? I would say no, Your Honor. Again, it's the state's position. It's speculation. But this is a case where you had ---- That's a good label. But how do we determine whether there's a reasonable probability? It's an exercise in judgment. Somewhere along the line there's a teeny tiny possibility, and somewhere over here there's a certainty, and somewhere in the middle is a reasonable probability. And how do we determine where that lies? Your Honor, the affidavit by the chief criminal deputy, Mr. Downs, said this policy had limited application. The county prosecutor has repeatedly defended this conviction in state court. So that evidence shows that they would not have applied the policy to this case. And also the test, again, is not what might have happened. It's whether this evidence, in light of the evidence presented at trial, whether there was a reasonable probability that the case would be different. So based on those facts, the state supreme court reasonably applied federal law in determining that the trial ---- there's not a reasonable probability the jury would not have convicted Mr. Shaw. In the July 1997 crime, which was the crime that ---- where he was arrested behind the gas station, Mr. Shaw himself referred to the evidence as a bag of drugs. He repeatedly said that this was a bag of drugs. He said, I was able to see it was a bag of drugs. This is at excerpts of records 797 to 798 and 803. So in the first ---- in the July 1997 trial or case, he himself admitted this was a bag of drugs. In the other case, the September crime, where it was the arranged undercover buy, his passenger testified directly, we went there to sell cocaine and this was cocaine. Looking at the undisclosed evidence, which would have only been impeaching of Mr. Hoover, there's not a reasonable probability that the outcome of the trial would have been different. And Mr. Hoover's testimony was limited. It was only seven pages long in the July 1997 crime and only ten pages long in the September 1997 crime. And the focus on the two trials was not whether this was cocaine. The focus was whose cocaine was it. And Mr. Shaw's defense was this was not cocaine. The state court decision was a reasonable application of clearly established federal law. And for that reason, relief cannot be granted. And we would ask the court to affirm the district court's judgment. Thank you, counsel. It doesn't appear we have any more questions. You have used up your time, but you may have a minute for rebuttal. I just want to address one point, and that is that the identity of the substance the fact that the identity of the substance was not contested, that it was not a subject at both of these trials, is the best evidence that this exculpatory evidence was material at both of these cases. For both of these cases, it would have completely changed the dynamics of the trial. of both of these trials, not only on the few pages allocated to Mr. Hoover, which would have been substantially longer in light of this evidence if it existed at all, but also in terms of the ability to impeach the other testimony, the aggressiveness of impeaching the other testimony regarding the identity of the substance. And I'll stop there unless there are further questions. It was more than one sentence but less than a minute. Thank you. We appreciate the arguments of both counsel. The case just argued is submitted, and we'll take about a five-minute break. All rise. This court stands in recess.
judges: Graber, Rawlinson, Wright